No. 24-2533

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT
AUTHORITY, et. al.,

*Plaintiffs-Appellants*,

v.

JOSEPH R. BIDEN, et al.,

*Defendants-Appellees*,

and

NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, et al.,

*Intervenor-Defendants-Appellees*.

───────────

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF ALASKA,

No. 3:21-cv-00245-SLG (Honorable Sharon L. Gleason)

───────────

## APPELLANTS' MOTION TO HOLD APPELLATE PROCEEDINGS
## IN ABEYANCE, OR IN THE ALTERNATIVE,
## ADMINISTRATIVELY CLOSE APPEAL

i

Plaintiff-Appellants Alaska Industrial Development and Export Authority ("AIDEA"), North Slope Borough ("NSB"), Arctic Slope Regional Corporation ("ASRC") and Kaktovik Iñupiat Corporation ("KIC") respectfully move to hold in abeyance, through February 28, 2024, their appeal regarding the temporary moratorium of the oil and gas program for the Coastal Plain of the Arctic National Wildlife Refuge ("ANWR"), and the suspension of oil and gas leases issued under the program. This limited stay will allow the District Court of Alaska time to decide a closely-related case. That case involves many of the same parties and challenges subsequent actions by Defendant-Appellee Department of Interior ("DOI") permanently cancelling the suspended leases – the same leases at issue in this case. Moreover, staying the appeal further promotes efficiency because DOI represents it will take actions over the next nine weeks to meet a December 22, 2024 statutory deadline, which will likely conclude the moratorium challenged in this appeal.[1] Alternatively, Appellants request the appeal be administratively closed, with any party free to move to reopen should circumstances change.

---

[1]     To be clear, while the actions DOI is expected to take by the end of 2024 to comply with the Tax Act's deadline to issue a second set of leases by December 2024 may moot this appeal, by putting the ANWR oil and gas program back in active status rather than suspended or moratorium status, those actions are not expected to moot the related case challenging lease cancellation now pending before the District Court, which is discussed below. By cancelling all remaining leases from the January 2021 lease sale, DOI undid its compliance with the Tax Act's deadline to issue a first set of leases by December 2021. Pub. L. No. 115-97, § 20001(c).

1

Prior to filing this Motion, Appellants discussed it with Appellee DOI, which stated: "The United States is reserving taking a position on the motion for a stay [of appellate proceedings] until it has the opportunity to review the motion and will file a response to the motion." Appellee-Intervenors also reserve their position and expect to file a response.

## I.        Factual and Procedural Background

This appeal and the related case pending in the District of Alaska concern the oil and gas program for the ANWR Coastal Plain. Section 20001 of the Tax Act of 2017 directed DOI to issue an initial tranche of oil and gas leases in ANWR by December 22, 2021; to issue another second tranche of oil and gas leases by December 22, 2024; to issue the necessary rights-of-way for oil and gas development to occur; and to otherwise administer this non-discretionary oil and gas program.[2]

1. Events Leading up to Judgment in the Suspension and Moratorium Case

In January 2021, shortly before the Trump Administration left office, DOI conducted the first lease auction. Plaintiff-Appellant AIDEA (an economic development corporation owned by the State of Alaska) and other companies were successful bidders and were issued oil and gas leases. Shortly after taking office, however, the Biden Administration's DOI, in June 2021, took two related actions, both of which are challenged in this appeal: (1) it suspended, but did not cancel, the

---

[2]    Pub. L. No. 115-97, § 20001(b) and (c) (the "Tax Act"). *See* statutory addendum.

ANWR leases, including the AIDEA leases, pending the completion of a Supplemental Environmental Impact Statement ("SEIS") in which DOI would evaluate what further actions to take regarding those leases; and (2) it issued a "Temporary Halt" (the moratorium) blocking all work by DOI employees on this oil and gas program, until completion of that SEIS.[3] All leaseholders except for Appellant AIDEA then voluntarily surrendered their leases.

Faced with these roadblocks, Appellants in November 2021 filed the case below seeking judicial review of the lease suspension and the moratorium. Because the local jobs, economic activity, and tax revenue expected to be generated by the ANWR oil and gas program were all frustrated by the lease suspension and moratorium, three other plaintiffs joined AIDEA. Appellant NSB is the regional local government for the North Slope. Appellant ASRC is the Alaska Native Regional Corporation for the North Slope. Appellant KIC is the Alaska Native Village Corporation associated with the only Alaska Native community (Kaktovik) that lives on ANWR's Coastal Plain. AIDEA was barred by the lease suspension and moratorium from conducting any work, including preliminary archeology and

---

[3]   Exhibits 2 & 3 to this Motion (AR 3365, lease suspension; AR 3362, moratorium). The Declaration of James H. Lister (Exhibit 1) certifies that the Exhibits to this Motion are from the District Court records in the cases discussed in this Motion.

seismic studies.[4] The other Appellants (NSB, ASRC, and KIC) lost derivative economic and tax revenue benefits from AIDEA's planned oil and gas development. Citing the Executive Order that became the moratorium, DOI also declined to process KIC's application for permissions to start surveys relating both to lands leased by AIDEA and to KIC's own nearby lands (inholdings) within ANWR.[5]

On August 7, 2023, the District Court of Alaska affirmed the lease suspension and moratorium.[6] The District Court's opinion recognized that the Tax Act imposed on DOI a non-discretionary "shall" duty to issue leases and administer the oil and gas program, but held that DOI was not obligated to implement the program at any particular pace, except that DOI had to conduct the first lease sale by December 2021 and a second by December 2024.[7] The District Court concluded that DOI's concerns regarding the legality of the environmental review process that DOI had used in issuing the leases supported DOI hitting the "pause" button by imposing the moratorium and suspending the leases. It indicated that doing so was appropriate while DOI undertook a supplemental NEPA analysis in order to make a final decision

---

[4]   Exhibit 4 (AR 3395-3400). Unless another case is specified, references to documents are to the District Court record for this suspension and moratorium case.

[5]   Exhibit 5 (AR 3713); Exhibit 6 (Exec. Order 13990, AR 3351, which directly led to the moratorium); Exhibit 7 (AR 3712, 3507-14, 3415 and 3419).

[6]   Exhibit 8 (DE 72, August 7, 2023) ("Summary Judgment Order").

[7]   *Summary Judgment Order* at 18-20.

503357\285\1744480

on what to do with the leases and how to proceed with the Program.[8] DOI in its lease suspension and moratorium decisions had not made any final decisions regarding what to do with the leases, so the District Court's opinion affirming those "temporary" actions had a correspondingly provisional tenor.[9] The District Court repeatedly emphasized that the suspension and moratorium were only "temporary" actions, using the words "pause," "pauses," or "paused" 25 times. It declined to decide if DOI could later cancel AIDEA's leases.[10] Appellants appealed.

2. <u>Post-Judgment Events and Related Proceedings</u>

Subsequent events have, for now, overtaken the lease suspension and program moratorium issues on appeal to this Court. Thirty days after the District Court upheld the lease suspension and moratorium, DOI cancelled AIDEA's leases. By that point, AIDEA's leases were the only remaining leases that had not been relinquished.[11] Thus, as a result of DOI's actions, there were no longer any oil and gas leases in existence for the Coastal Plain.

After the lease cancellation, Appellants moved in the suspension and moratorium case for an order vacating the District Court's earlier judgment on the grounds that the subsequent lease cancellation decision mooted the case. In a

---

[8]    *Id*. at 65-67.

[9]    *Id.* at 63 and n. 259, 65-66; see also Exhibits 2 and 3.

[10]   Exhibit 8 (*Summary Judgment Order* at 17 and n. 66 and 65); *see* Exhibit 2.

[11]   Exhibit 9 (Lease Cancellation Case, No. 3-24-cv-00051-SLG, AR 5353).

February 2024 order, the District Court found that the case was not moot. It reasoned that the lease suspension issue and moratorium issues could revive if Appellant AIDEA was successful in its related lawsuit seeking to overturn the lease cancellation, as overturning the cancellation would presumably restore the leases to their prior suspended status.[12] The District Court also found that Appellant KIC, which owned land within ANWR (inholdings), as opposed to leasing land from DOI, could still seek to have the continuing moratorium set aside, so that the moratorium was no longer a barrier to DOI considering KIC's applications to conduct surveys.[13]

The lease cancellation case that AIDEA filed in October 2023 raises both procedural issues and substantive issues related to the issues on this appeal regarding the lease suspension and moratorium. When DOI suspended the leases in June 2021, DOI said it would prepare an SEIS and would use that NEPA process to evaluate the legality of the leases.[14] In initiating the SEIS process, and as required by NEPA, DOI promised that it would publish a Draft SEIS and provide a comment period before adopting a Final SEIS and then taking action.[15] But in the lease cancellation decision, which DOI said was "final and not subject to appeal," DOI expressly relied on the

---

[12]  Exhibit 10 at 13-15 (DE 97, Feb. 22, 2024) ("Post-Judgment Motions Order").

[13]  *Post-Judgment Motions Order* at 15.

[14]  Exhibit 2 (lease suspension); Exhibit 11 (addendum to lease suspension).

[15]  Exhibit 12 (Federal Register Notice, AR 3368-69).

Draft SEIS it issued that same day.[16] Thus DOI made its final decision to cancel the leases before AIDEA could comment on the Draft SEIS or the lease cancellation.

The lease cancellation case has now been fully briefed on cross-motions for summary judgment. The parties to that case, who are all parties to the present appeal, jointly requested that the District Court decide the lease cancellation case by October 25, 2024.[17] The parties all agreed that it would be helpful for DOI to know before the statutorily required December 2024 lease sale whether the cancellation of AIDEA's leases was valid, so that the agency will know whether the acres previously leased to AIDEA can be re-offered for lease sale at the December 2024 auction.

Meanwhile, the moratorium that DOI announced in 2021 technically continues in effect, but has little practical impact. Because DOI suspended and then cancelled all ANWR program leases, there are no lessee operations for the moratorium to halt.[18]

---

[16]   Exhibit 9 at 7 (Lease Cancellation Case AR 5358-59). The administrative record for the lease cancellation case is the administrative record for the suspension and moratorium case plus documents addressing lease cancellation.

[17]   Exhibit 13 (Lease Cancellation Case, Joint Motion Regarding Scheduling Order at 1-2, and 4, DE 48). While the District Court could deny all cross-motions for summary judgment and hold a trial as to one more factually-intensive claim, that is a fairly remote scenario in this judicial review case.

[18]   Additionally, although KIC owns inholdings within the Coastal Plain, KIC needs to work with other business partners to develop its land, and business partners are not available with the Moratorium in place. *See* Prepared testimony of KIC President Charles Lamp to House of Representatives Subcommittee on Energy and Mineral Resources regarding HR 6285, November 29, 2023, p. 62  (detailing impact of losing subcontractor work from AIDEA)  https://www.govinfo.gov/content/pkg/CHRG-118hhrg54199/pdf/CHRG-118hhrg54199.pdf.  Among other issues, KIC desires to

Further, the moratorium is expected to expire within the next nine weeks as the ongoing agency NEPA SEIS proceedings come to a close. On September 30, 2024, DOI stated in a Status Report to the District Court that it will issue a Final SEIS, and then a record of decision ("ROD") in the fourth quarter of 2024, and intends to then comply with Tax Act deadlines, i.e. the December 22, 2024 deadline to conduct the second lease sale.[19] Importantly, the moratorium's terms preclude any DOI activities related to the Program (Ex. 3 at 1), which includes conducting lease sales. Thus, conducting the second lease sale will necessarily end the moratorium. The District Court has directed DOI to file an updated Status Report by December 31, 2024.[20]

## II.    Argument

The Court has the inherent power and discretion to stay proceedings before it as part of its authority "to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and

---

work in conjunction with other developer(s) leasing DOI land, who could develop oil transport  infrastructure for much of the way from KIC's land in the middle of the Coastal Plain to the west to meet existing infrastructure near Prudhoe Bay. The Coastal Plain lands DOI leased to AIDEA were west of KIC lands, and thus between KIC lands and that existing infrastructure.

[19]    Tax Act § 20001(c); Exhibit 14 (DOI Status Report, DE 106, Case No. 3:20-cv-00204-SLG, District of Alaska).  Note the different case number.  DOI filed the status report in an older now-stayed case filed against DOI in 2020 by project opponents.

[20]    Exhibit 15 (Text Order, DE 107, Case No. 3:20-cv-00204-SLG).

503357\285\1744480

for litigants."[21] This discretionary authority exists "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."[22] This discretionary authority has been invoked to stay appeals pending action by another tribunal that could render the appeal moot.[23] Courts weigh three non-exclusive factors in considering such a stay: "(1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law."[24]

### A. Stay Factor – Litigation Efficiency and Docket Management

The third factor goes to litigation efficiency and docket management. Appellants address it first because that discussion illuminates the other two factors.

This factor strongly supports staying this appeal while the related proceedings before agency defendants and the District Court are resolved. Those actions will

---

[21]   *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. North American Co.,* 299 U.S. 248, 254-255 (1936)).

[22]   *Leyva v. Certified Grocers of California*, 593 F.2d 857, 863-864 (9th Cir. 1979); *see In re PG&E Co. Securities Litigation*, 100 F.4th 1076, 1086 (9th Cir. 2024) (the judicial efficiency "to be gained by the stay is not illusory simply because" the other tribunal's decision will not be "binding" or entirely eliminate further adjudication).

[23]   *See*, e.g., *Arizona ex rel. Darwin v. EPA*, 815 F.3d 519, 528, n. 6 (9th Cir. 2016).

[24]   *Ernest Bock, LLC v. Steelman,* 76 F.4th 827, 842 (9th Cir. 2023) (quotes omitted).

narrow, if not fully resolve, the matters on appeal before this Court and provide greater clarity on the remaining issues of law and in assisting this Court's evaluation of the lease suspension and moratorium appeal.[25] A short stay pending a decision by the District Court in the lease cancellation case is intuitively reasonable.[26] Staying this case is consistent with the District Court's reasoning in finding the case to not be moot (Ex. 10 at 14) – that success by AIDEA in the related lease cancellation case could revive the lease suspension and moratorium issues. As discussed above,

---

[25] *See Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, 781 F.App'x 666, 666-667 (9th Cir. 2019) (upholding district court stay pending evidentiary proceedings in a related case because "[w]hat is done there will likely provide at least a partial remedy for Morgan Hill here; thus, judicial economy strongly favors the stay") and *Shipley v. U.S.*, 608 F.2d 770, 775 (9th Cir. 1979) (upholding district court's issuance of a stay pending a related Tax Court proceeding); *In re PG&E Co. Sec. Litig.*, 100 F.4th at 1086 (affirming district court which stayed case pending a related bankruptcy proceeding, because the district court would receive "considerable assistance in resolving" the action from the bankruptcy court's development of the record and assessment of common issues) (quoting *Lockyer v. Mirant Co.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

[26] *Compare CMAX, Inc*, 300 F.2d at 268-270 (holding district court did not abuse discretion in issuing a stay pending a decision from a related proceeding before the Civil Aeronautics Board) and *Chronicle Publ'g Co. v. Nat'l Broadcasting Co*., 294 F.2d 744, 747-749 (9th Cir. 1961) (upholding district court order staying all further proceedings until after a final determination by the FCC on related issues) with *Landis,* 299 U.S. at 252-259 (holding stay of district court proceedings pending eventual Supreme Court review of a separate district court proceeding unreasonable where the district court proceedings were still ongoing when the stay was issued and it was unclear when or if the Supreme Court would ever review the case). *See also Lockyer v. Mirant Co*., 398 F.3d 1098, 1110 (9th Cir. 2005) (interpreting Supreme Court decision in *Landis* to have also held that "a stay lasting only until the New York district court decided the case might be appropriate").

the outcome of the lease cancellation case will likely be known by the end of 2024. It will also likely be known by then whether the program moratorium has expired as expected, through DOI holding the second lease sale that the Tax Act requires it hold by December 2024. The Court should stay this appeal through February 28, 2025.

While the District Court may have been correct in its February 2024 determination that the lease suspension and moratorium case was not moot, because contingencies exist in which the lease suspension and moratorium could resume having a practical importance, there is little or no relief the Court of Appeals could grant Appellants based on the facts that presently exist.[27] At most, the Court at present in this appeal could grant a contingent declaratory ruling that, if the cancellation of the same leases is overturned in the related case, then the leases would revert back to active rather than to suspended status. Any such relief would be abstract and hypothetical. Given the appellate briefing schedule in this case, there is no practical relief that the Court could grant regarding the moratorium, whether to KIC or another Appellant, if the moratorium expires as expected at the end of 2024.[28]

---

[27]    *Post-Judgment Motions Order* at 14-15. The mootness analysis as to KIC was not as contingent on the lease cancellation case outcome as it was for AIDEA, but at the time the expiration of the moratorium was 10 months away, not nine weeks away.

[28]    The current briefing schedule ends in December 2024. Given KIC's desire to work with the lessee of DOI lands between KIC's inholdings and existing infrastructure, as well as difficulties in finding business partners with the Coastal Plain Program in moratorium status, it made no sense for KIC to press this appeal

11

Judicial economy strongly supports issuing a stay pending the resolution of a related proceeding or agency action, each of which which may decide important issues which could bear upon the stayed case. [29] There are substantial efficiencies for both the Court and the parties to stay the lease suspension and moratorium appeal until the lease cancellation case is decided and until it is known whether the moratorium expires at the end of 2024. If the moratorium expires as expected at the end of 2024, then the moratorium issues are entirely moot. Additionally, if the moratorium expires as scheduled and AIDEA prevails in the lease cancellation case, then DOI may take the position that AIDEA's leases revive in active, rather than suspended, status because of the expiration of the moratorium. In that situation, the entire appeal would be moot.

Staying the present appeal until February 28, 2025 will also allow closely related issues concerning the same oil and gas leases and the same oil and gas program to efficiently go before the Court of Appeals for a single consolidated decision, rather than two successive decisions. If the District Court in the related case overturns the lease cancellation during the stay of this appeal, and DOI determines that the leases revive with suspended rather than active status, DOI can appeal the overturning of the lease cancellation to this Court while AIDEA revives and presses

---

forward faster while the case challenging cancellation of those leases is pending. See n. 18 above.

[29]   *See* n. 25 above.

503357\285\1744480

its appeal of the lease suspension. This Court could then consolidate the two appeals for briefing, argument, and decision in one opinion. It could then affirm the overturning of the lease cancellation and reverse the lease suspension in an order with direct non-contingent effect, providing practical relief. Conversely, if the District Court upholds the lease cancellation, AIDEA can appeal that judgment to this Court, and the lease suspension issue can be heard at that same time as a remedy matter, as the suspension would then matter only if this Court overturns lease cancellation. Either way, consolidating the lease suspension and lease cancellation issues together for one appellate decision is far more efficient than (1) deciding in a first appellate decision whether lease suspension would be valid if the lease cancellation is overturned in the related case, and (2) then deciding in a second appellate decision in the related case whether the lease cancellation was valid. The lease suspension issue would also be fully moot if lease cancellation is ultimately upheld on appeal.

Moreover, the analyses regarding the moratorium issue are similar, both as to impending mootness and appellate briefing efficiency. In the unlikely event DOI does not revive the program by holding the second lease sale by the Tax Act's § 20001(c) December 22, 2024 deadline and instead extends the moratorium past its expected termination, those events immediately would become the focal point of any appellate briefing on the moratorium. As discussed above, the District Court repeatedly stressed that the moratorium had not conflicted with any express statutory deadlines;

13

a failure to meet the statutory deadline for the second lease sale would fundamentally change that analysis. Alternatively, if DOI lifts the moratorium and meets its deadline for the second lease sale, as the agency represents that it will, this too significantly changes the briefing. In that scenario, the parties' briefing can simply inform the Court that the moratorium has expired and that this aspect of the appeal is moot. Either way, prior to the Court rendering its decision on this appeal, and within the next nine weeks (by December 22, 2024) a material change in the facts will occur. Rather than proceeding to brief the appeal now and addressing a moratorium expected to expire in a matter of weeks, when we do not yet know for sure if DOI will end the moratorium, it is far more efficient and of greater use to the Court to stay briefing until after the deadline for the second lease sale. Then, if briefing of this appeal resumes in 2025, the parties can address the actual factual developments that occurred in December 2024, rather than predict upcoming events.

Finally, staying the appeal until early 2025 will allow the Court of Appeals to hear these issues after substantive issues are more fully developed through the ruling deciding the lease cancellation case. Two specific issues illustrate this point.

*2,000-Surface-Acre Issue.* First, in suspending AIDEA's leases in June 2021, DOI posited that the Trump Administration DOI might have misread a provision of the Tax Act discussing how many surface acres of the ANWR Coastal Plain were to

14

be made available for oil and gas facilities (the "2,000-surface-acre issue").[30] But DOI did not cancel the leases at that time.

In affirming the lease suspension and moratorium, the District Court held that DOI's concern regarding its earlier statutory interpretation was sufficient to justify pausing operations under the leases pending further agency decision-making.[31] But the District Court expressly declined to decide whose reading of the statutory text concerning the 2,000-surface-acre issue was correct.[32] Thus, this case now comes before the Court of Appeals without the benefit of any definitive District Court ruling interpreting the statutory text that the parties can address in their briefs and the Court can review. However, in subsequently cancelling AIDEA's leases, DOI relied on the 2,000-surface-acre issue.[33] That statutory interpretation issue is now fully briefed in the related lease cancellation case.[34] By staying the present appeal regarding lease suspension and the moratorium until the District Court decides the lease cancellation case, and then consolidating appeals from that decision with the present appeal, the

---

[30]   Exhibit 2 (AR 3365); see Tax Act § 20001(c)(3).

[31]   Exhibit 8 (*Summary Judgment Order* at 63-67 and n. 259)

[32]   *Summary Judgment Order* at 63, n. 259, and 65-66.

[33]   Exhibit 9 (Lease Cancellation Case, AR 5356).

[34]   Lease Cancellation Case briefing excerpts: Exhibit 16 (DE 50 at 25-26, 43-47); Exhibit 17 (DE 53 at 19-24); Exhibit 18 (DE 65 at 40-45).

Court of Appeals can consider this statutory interpretation issue with the benefit of a definitive District Court ruling.[35]

*Downstream Greenhouse Gas Issue.* Second, in an August 2022 letter to AIDEA, DOI supplemented the reasoning for its suspension of AIDEA's leases by noting that it was also considering whether to cancel AIDEA's leases because DOI under the Trump Administration might have violated NEPA by failing to consider the downstream greenhouse gas impact of issuing leases in ANWR under the Tax Act.[36] The District Court cited this issue as an additional reason for affirming lease suspension and the moratorium as actions to "pause" the program while DOI made final decisions as to what to do.[37] However, the District Court was careful to note that lease <u>suspension</u> did not "undo[]" any actions statutorily required by the Tax Act, and that this was a key basis for affirming the suspension and moratorium.[38] As noted, the Tax Act required DOI to issue a set of leases by December 2021.

[35]    At present, because there is no District Court ruling on the statutory interpretation issue, it would be premature to attempt to brief it now in this appeal. The provisional aspect of the District Court's ruling (that the 2,000-surface-acre issue is significant enough to justify a temporary lease suspension until supplemental environmental analysis is completed) cannot practically be appealed at this time, because the supplemental NEPA work addressing that issue is weeks away from being completed. If the suspension case revives, and the District court decides the 2,000-surface-acre statutory interpretation issue in deciding the lease cancellation case, then that issue can be efficiently presented in consolidated briefing on appeals from both cases.

[36]    Exhibit 11 (AR 3404-05).

[37]    Exhibit 8 (*Summary Judgment Order* at 57-59).

[38]    *Id.* at 71. *See also* p. 16.

16

Thus, while the District Court has affirmed provisional and temporary agency action (the lease suspension and moratorium), in part on the basis of the downstream greenhouse gas issue, we do not yet have a definitive ruling from the District Court regarding whether the downstream greenhouse gas issue would justify DOI's subsequent decision to cancel AIDEA's leases. Further, the greenhouse gas issue arrives in this appeal without the benefit of the substantially more detailed briefing on the issue that the parties have submitted in the pending lease cancellation case. Because DOI justified lease cancellation in part based on the downstream greenhouse gas issue, and lease cancellation has a far greater practical impact than lease suspension, the briefing of the issue in the lease cancellation case is far more complete than it was in the suspension and moratorium case.[39] Granting the requested stay will allow the important downstream greenhouse gas issue to develop more fully in the related case before the Court is charged with deciding it. As discussed above, a stay of this appeal will allow consolidated briefing of the two related cases.

---

[39] The pertinent question is whether the issuance of ANWR leases was a non-discretionary agency duty under the Tax Act, § 20001(c). If it was, under *Dep't. of Transp. v. Public Citizen*, 541 U.S. 752, 767-69 (2004), DOI's actions in January 2021 in complying with that non-discretionary duty to issue leases were not subject to analysis under NEPA and so not subject to invalidation for alleged failures in NEPA analysis. *See* Lease Cancellation Case briefing, Exhibit 16 at 18-24, Exhibit 19 at 19-21; Exhibit 18 at 21-29. Congress ordered DOI to issue leases, taking off the table the option of declining to issue leases due to greenhouse gas impacts.

In summary, staying this case through February 2025 imposes only a minor delay, allowing time for further development of facts and legal issues relevant to the scope and at stake in this appeal.

> B.     Stay Factor – Avoiding Prejudice to the Parties Seeking the Stay

Appellants would be prejudiced by forcing them to move ahead now and press their appeal to a decision at a time when there is little if any practical relief that this Court could grant them on the present facts. Circumstances could soon occur that will revive the importance of the issues on appeal and make practical relief available, as discussed above. But those circumstances have not yet occurred and so cannot be precisely described in an appellate brief. The proper course then to avoid prejudice to Appellants is to stay the appeal briefly to see if those circumstances occur.

It is very difficult for an appellant to persuade an appeals court to step in and overturn a district court during a window of time in which events have overtaken the appeal, such that the appeal hardly matters. It is difficult to effectively present in a brief what the situation and equities in a case would be if certain contingencies come to pass (lease cancellation is overturned for one reason or another, moratorium is unexpectedly extended), because those future facts do not yet exist, and therefore cannot yet be described in a brief in a way that is vivid, precise, and compelling. Staying the appeal for a short time to see if contingencies develop that will revive the importance of the issues on appeal and overcome these roadblocks to effectively

presenting the appeal serves all parties and the Court. It both avoids prejudice to Appellants and ensures that the Court will not be tasked with making advisory rulings on issues of little practical import.[40] Further, staying the appeal during a period in which little if any practical relief can be granted avoids a waste of resources.[41] Depending on how the contingencies develop, if this appeal revives, it can be consolidated with any appeals from the closely related lease cancellation case for more efficient briefing. Or, as discussed above, the appeal may become entirely moot.

C.    Stay Factor – Avoiding Prejudice to Parties Opposing a Stay

Finally, there is no prejudice to Defendant-Appellees from staying this appeal. When "there is even a fair possibility that the stay…will work damage to someone else," the party moving for the stay "must make out a clear case of hardship or inequity."[42] However, here, not only is there no prejudice to Defendant-Appellees in staying the appeal, but further, staying this appeal prolongs a *status quo* that is already

---

[40]    See *Chronicle Publ'g Co.,* 294 F.2d at 747-748 (pendency of two proceedings simultaneously assembling the same facts but analyzing them in different contexts presented a situation "which cries out for the elimination of wasteful duplication of effort" -- "[t]he burden of such duplication of effort is not, of course, borne by the courts alone. It is borne as well by the litigants and their counsel"); *Filtrol Co. v. Kelleher*, 467 F.2d 242, 245 (9th Cir. 1972) (similar).

[41]    While Appellants plan to tender an opening brief to avoid missing their opening brief deadline, staying the appeal would (a) facilitate their submitting a revised opening brief in early 2025 that addresses the events occurring this fall, and (b) defer the need to file a reply brief until after those facts are known.

[42]    *Landis,* 299 U.S. at 255.

favorable to Defendant-Appellees. Defendant-Appellees prevailed in the District Court. The on-the-ground situation they want (that no oil and gas leases in ANWR are active and no oil and gas development in ANWR is occurring) is the on-the-ground situation that is in effect today.[43] That *status quo* will continue in effect under the requested stay. Nor will the stay preclude Defendant-Appellees from lifting the moratorium or proceeding with the second lease sale. The agency retains control over the timing of those actions, aside from the statutory deadlines. Finally, the related lease cancellation case will continue regardless, so the requested stay will not force Defendant-Appellees into another proceeding they could avoid if the stay is denied.

### III.    Conclusion

The Court should stay proceedings on this appeal through February 28, 2025. This will allow the parties approximately 60 days to evaluate the impact of the agency proceedings that must be completed by December 22, 2024. It will also allow time to evaluate the District Court's expected ruling in the lease cancellation case.

In the alternative, Appellants request that the Court administratively close the appeal, leaving any party free to move to reopen it after December 22, 2024, the statutory deadline for the second lease sale, after which so much more will be known.

---

[43]    *Compare Lockyer,* 398 F.3d at 1112 (inquiring whether requested stay would prolong a status quo unfavorable to the parties opposing the stay).

503357\285\1744480

DATED this 16th day of October, 2024.

Respectfully submitted,

/s/ *James H. Lister*
James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094
Birch Horton Bittner & Cherot
1150 Connecticut Ave, N.W. Suite 350
Washington, DC 20036
jlister@bhb.com
bgerd@bhb.com
dgross@bhb.com
zeisberg@bhb.com
Telephone 202.862-8368
Facsimile 202.659.1027

Attorneys for Plaintiffs-Appellants Alaska
Industrial Development and Export
Authority, North Slope Borough, Arctic
Slope Regional Corporation, and Kaktovik
Iñupiat Corporation

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the _16th___ day of October, 2024, a true and correct copy of the foregoing was served on the following via the Court's CM/ECF electronic delivery system:

BIRCH HORTON BITTNER & CHEROT

By:    /s/ James Lister

21