No. 24-2533

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALASKA INDUSTRIAL DEVELOPMENT AND EXPORT
AUTHORITY, et. al.,
*Plaintiffs-Appellants*,

v.

JOSEPH R. BIDEN, et al.,
*Defendants-Appellees*,

and

NATIVE VILLAGE OF VENETIE TRIBAL GOVERNMENT, et al.,
*Intervenor-Defendants-Appellees*.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF ALASKA,
No. 3:21-cv-00245-SLG (Honorable Sharon L. Gleason)

———————————

## APPELLANTS' CONSOLIDATED REPLY IN SUPPORT OF THEIR
## MOTION TO HOLD APPELLATE PROCEEDINGS IN ABEYANCE, OR
## IN THE ALTERNATIVE, ADMINISTRATIVELY CLOSE APPEAL

## **Consolidated Reply in Support of Motion to Stay Appellate Proceedings**

Appellants Alaska Industrial Development and Export Authority

("AIDEA"), North Slope Borough ("NSB"), Arctic Slope Regional Corporation

("ASRC") and Katovik Iñupiat Corporation ("KIC") respectfully submit this

Consolidated Reply to the Responses (ECF 23.1, 24.1, and 25.1) to their Motion to

Hold Appellate Proceedings in Abeyance ("Motion to Stay," ECF 15.1).

The circumstances call for staying this appeal through February, 2025, by

which point we should know whether the appeal has become moot, and if not,

which parts of the appeal remain to be resolved. None of the Appellees rebut the

two essential points: (1) the moratorium challenged in this appeal is set to end in

December, 2024, and this appeal's challenge to the moratorium will then be moot;

and (2) continuing to litigate the validity of DOI's June, 2021 order suspending

Appellant AIDEA's leases, before it is known whether DOI's September, 2023

order cancelling those leases is overturned in the related and fully briefed

litigation, will both harm Appellants and waste this Court's time and resources.

This appeal challenging the now-superseded lease suspension and the expiring

lease moratorium should be stayed while these events unfold.

Instead of contesting these two key points supporting a stay of the appeal,

Appellees Department of Interior ("DOI") and private Appellees nibble around the

edges by making make a series of arguments opposing a stay:

2

1. that this Court lacks authority to grant a stay of appellate proceedings;

2. that the District Court might take more time to decide the related fully-briefed lease cancellation case;

3. that DOI in an appellee brief could inform the public of it plans for an upcoming oil and gas lease sale not directly involved in this appeal;

4. that Appellees have already worked on their brief;

5. that Appellants have already filed their opening brief; and

6. that this appeal concerning the earlier suspension of leases might shed light in the related litigation concerning cancellation of the leases.

None of Appellees' argument for opposing a stay of this appeal have merit.

1.  <u>Authority to stay appellate proceedings</u>. Caselaw provides this Court with ample authority to stay the appellate proceedings before it.[1]

2.  <u>Potential that the District Court will take some more time to decide the lease cancellation case</u>.  Appellees suggest that the District Court might take some time to rule in the lease cancellation case, and that such a risk of delay in the

---

[1] *See* Motion to Stay at 9-10 and n. 23 (citing caselaw including *Arizona ex rel. Darwin v. EPA*, 815 F.3d 519, 528, n. 6 (9th Cir. 2016)). *See also, Inland Empire-Immigrant Youth et al v. Mayorkas,* No. 18-55564 (9th Cir. 2023) (stay of appellate proceedings pending both anticipated agency rulemakings and a pending district court case); *Poyson v. Ryan*, 743 F.3d 1185 (9th Cir. 2013) (stay of appellate proceedings pending related Ninth Circuit appellate case); *Long v. U.S. I.R.S.*, 932 F.2d 1309 (9th Cir. 1991) (staying appeal pending related litigation).

District Court is a reason to deny a stay of this appeal. While Appellees correctly note that all parties in the lease cancellation case jointly asked the District Court to rule whether the lease cancellation was valid or invalid by October 25, 2024, an aspirational target date that must be regarded as informally extended by a subsequent two-week briefing extension, there remains every reason to believe that the District Court will rule on whether the lease cancellation was lawful before December 22, 2024.[2] That is when DOI, by statute, must conduct the second lease sale.[3] DOI announced its intent to auction off in that second lease sale many of the acres it leased to AIDEA in the leases that DOI then cancelled. The potential for chaos if the cancellation of AIDEA's leases is overturned after the same acres have been leased to someone else in the December, 2024 sale led the parties to jointly request a prompt decision from the District Court.[4] There is every reason to believe the District Court will rule promptly, to avoid such a situation.[5]

Appellees in opposing a stay of appellate proceedings do not attempt a similar "things could take longer than Appellants suggest" argument with respect to the moratorium, which is the second issue on appeal. The Tax Act requires a

---

[2]   Motion for Stay at 7 and Exhibit 13 at 1-2 and 4.

[3]   Tax Act, Pub. Law 115-97, § 20001(c) (enacted December 22, 2017).

[4]   Motion for Stay Exhibit 13 at 1-2 and 4.

[5]   If unexpected delay in the District Court occurs, nothing in the requested stay, which runs through February, 2025, prevents a resumption of briefing this appeal.

second lease sale in December, 2024. DOI cannot complete the necessary steps to conduct that lease sale unless the moratorium on DOI personnel conducting work on the oil and gas program ends. Significantly, neither DOI nor any of the other Appellees took issue in their Responses with Appellants' key assertion that the moratorium will expire in December, 2024. Therefore, none of the Appellees contested the essential point that this appeal's challenge to the lawfulness of the moratorium is expected to become moot in only a month. It is wasteful to continue litigating the moratorium when the issue will likely go away so soon.

      3.   <u>Informing the public regarding the 2024 lease sale</u>. Appellee DOI contends that the public will receive information regarding the lease sale to be held by December 22, 2024 if DOI files its appellee brief as scheduled on November 22, 2024. DOI does not explain how filing an appellate brief concerning its June 2021 decisions to suspend AIDEA's leases and impose a moratorium is a good way to inform the public about an upcoming December, 2024 lease sale. In any event, there is insufficient time between the December 13, 2024 due date for Appellants' reply brief in this appeal and the second lease sale (which by statute must occur by December 22, 2024) for this Court to utilize DOI's appellee brief to render a judicial ruling that could provide guidance to DOI or the public.[6]

_____

[6]    Appellees have moved by consent to extend the due date for their appellee briefs to November 22, 2024, which would put the due date for Appellant's reply brief at December 13, 2024. ECF 26.

If DOI is suggesting that the mere filing of an appellate brief has informational value to the public, even before any appellate judicial ruling occurs, then DOI is using Appellate ECF as a public address system, which is not the purpose of appellate briefing. DOI communicates regarding oil and gas lease sales by publishing notices of sales and the rules regarding them in the Federal Register and providing further explanation in Records of Decision published on its website.[7] Further, if DOI wants to file some document such as a notice on the Court's record, in order to discuss the upcoming lease sale, nothing stops DOI from doing so. The requested stay of this appeal would suspend the briefing schedule, not bar parties from filing notices of related proceedings.[8]

4.  <u>Appellees' alleged sunk costs</u>.  Some Appellees oppose a stay on the grounds that they have already invested resources in this appeal by working to prepare a brief for filing. No Appellee briefs have yet been filed. Further, when Appellants filed their opening brief, they concurrently moved to stay proceedings,

---

[7]  Tax Act, Pub. Law No. 115-97, § 20001(b) (directing DOI to implement the ANWR leasing program in a manner "similar" to the statute and rules governing the program for the National Petroleum Reserve Alaska, known as the "NPRA"); 43 CFR 3131.4-1 (NPRA lease sales must be noticed in the Federal Register).

[8]  Additionally, Appellants filed their motion to stay appellate proceedings before the election, and so did not rely on the results of the election. We now know that in 67 days a new Administration will take office, led by a President whose prior Administration issued the leases that the current outgoing Administration suspended and then cancelled. The new Administration might wish to state its views on the appeal, which it can do if the appeal is stayed.

and so to excuse Appellees from having to immediately prepare and file their briefs.[9] Appellants also consented to a briefing extension Appellees requested.[10] There has been no contested motions practice in this appeal, other than the present motion to stay appellate proceedings. Thus any "sunk costs" incurred by Appellees are both limited and incurred at Appellees' own volition. Further, even if such "sunk cost" were real, a stay that avoids prejudice and creates docket efficiencies going forward should be granted, regardless of litigation efforts already expended.[11]

     5.   <u>Appellant's "election" to file an opening brief and/or Appellant's alleged dilatory filing of the motion to stay.</u> Private Appellees suggest that Appellants waived any right to move for a stay of appellate proceedings by "elect[ing] to file an opening brief." Appellants filed a brief to avoid defaulting on a briefing deadline that Appellees declined to agree to further extend. That is not

---

[9]  ECF 15 and 16.

[10]  ECF 26.

[11]  *See* Motion to Stay at 9-14, 18-20. See *Netlist Inc. v. Samsung Elecs. Co*., 2024 WL 943951, *2 (C.D. Cal. 2024) (stating, "Samsung proffers that a stay would 'wast[e] years of litigation before this Court and the Ninth Circuit.'…That argument rests on a sunk cost fallacy, and in any event, the parties' experience litigating the interpretation issues here surely has informed the parties' positions in the Texas Case.")

an "election" or waiver.  Further, the opening brief Appellants filed is rapidly

becoming stale.  The facts relevant to mootness are expected to change soon.[12]

Some Appellees suggest that Appellants should have sought a stay earlier in

the course of the appeal.   That suggestion overlooks the history of the appeal.

From the outset of the appeal, there were discussions of whether the appeal should

be put on hold.   There was a 90-day consensual briefing extension.[13]  After that

extension concluded, and Appellees declined to extend it, Appellants previewed

their motion to stay appellate proceedings to Appellees and urged Appellees to

consent to it.   On October 16, 2024 Appellee DOI stated that it had not determined

what position it would take on the previewed motion to stay appellate proceedings.

DOI therefore asked Appellants to state in their motion that DOI was reserving its

position on the motion, which Appellants did in their Motion.  Private Appellees

similarly reserved their position.  In short, this appeal was stayed by consent for a

considerable period, then that consent broke down, then good-faith discussions

---

[12]     Additionally, motions to stay proceedings may be filed and granted at any
stage of the litigation. *See, e.g., Inland Empire-Immigrant Youth et al v. Mayorkas,*
No. 18-55564 (9th Cir. 2023) (granting stay of appellate proceedings both pending
anticipated agency rulemakings and again pending a district court case, where
motions were filed after briefing by all parties was complete) and *Inland Empire
Immigrant Youth Collective v. Nielsen,* 2019 WL 8011739, *2 (C.D. Cal. 2019)
(granting opposed motion to stay filed directly before summary judgment).

[13]     ECF Nos  2 and 11.

were held, and then Appellants moved for a stay.  The motion is no surprise to Appellees and was filed promptly by Appellants.

      6.    <u>Assisting the District Court hearing the lease cancellation case</u>.

Appellees suggest that a ruling on the merits of this appeal may guide the resolution of the lease cancellation case.  However, Appellees do not explain how an appellate ruling on the propriety of the now-superseded lease suspension would in any way contribute to resolution of the lease cancellation case.  That case raises additional claims not before this Court.[14] That case also addresses issues that do overlap with this case, but does so in the more concrete context of reviewing a final agency ruling (lease cancellation) rather than in the context of a reviewing provisional temporary agency rulings (the lease suspension and the moratorium).[15] Further, the related lease cancellation case is also far ahead of this appeal in terms of case schedule.  Briefing in the lease cancellation case has been complete since mid-September, 2024.   Briefing in this appeal is mid-stream.

## Conclusion

    A stay would spare Appellants from the duty to file a reply brief while events central to whether the appeal remains justiciable are rapidly unfolding.  This will save the expense of having to update that reply brief after those events unfold.

---

[14]    *See* Motion for Stay at 6-7, 14-17 (reviewing claims).

[15]    *See id*. at 5.

Because the moratorium is expiring, the appeal will almost certainly become moot as to that issue.   Further, if the entire appeal becomes moot during the requested stay, or developments result in there being no available appellate relief worth pursuing, then there will be no need to file a reply brief at all, and no need to update previously filed briefs.[16]  In that situation, Appellants would move to dismiss appeal for mootness, or dismiss the appeal voluntarily.  Finally, if this appeal ultimately does not become moot and does goes forward, the requested stay would allow this Court to have the benefit of a ruling from the District Court in the related lease cancellation case, before this Court tackles the lease suspension issue, which only matter if the lease cancellation is overturned.

For the foregoing reasons, this Court should stay these appellate proceedings through February 28, 2025, or, in the alternative, administratively close these proceedings with any party having the right to move to re-open.

---

[16]     Private Appellees express concern that, if Appellants seek leave to re-file their opening brief after events impacting mootness occur over the next few weeks, Appellants might attempt to raise issues not raised in the District Court. Appellants did not so overstep in the precautionary opening brief Appellants have already filed.  Appellees  have no basis to assert Appellants would do so if that brief must be updated.  Further, new facts relating to mootness and justiciability can and should be submitted.  Moreover, District Court rulings in a related case can be cited and may significantly influence the issues under appeal.

DATED this 14th day of November, 2024.

Respectfully submitted,

/s/ *James H. Lister*
James Lister, ABA #1611111
Brian V. Gerd, ABA #1810097
David Karl Gross, ABA #9611065
Zoe A. Eisberg, ABA #1911094
Birch Horton Bittner & Cherot
1150 Connecticut Ave, N.W. Suite 350
Washington, DC 20036
jlister@bhb.com
bgerd@bhb.com
dgross@bhb.com
zeisberg@bhb.com
Telephone 202.862-8368
Facsimile 202.659.1027

Attorneys for Plaintiffs-Appellants Alaska Industrial Development and Export Authority, North Slope Borough, Arctic Slope Regional Corporation, and Kaktovik Iñupiat Corporation

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the _14th___ day of November, 2024, a true and correct copy of the foregoing was served on the following via the Court's CM/ECF electronic delivery system:

BIRCH HORTON BITTNER & CHEROT

By:      /s/ *James H. Lister*_____

## CERTIFICATE OF COMPLIANCE

     I hereby certify that this document complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(C)&(D) and 32(a)(7)(A) because this document contains 10 pages and 2,319 words, excluding the parts of the reply exempted by the Federal Rule of Appellate Procedure 27(a)(2)(B) and 32(f). Furthermore, this reply complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this reply has been prepared using Microsoft Word in 14 point Times New Roman style font.

*/s/ James H. Lister*
James H. Lister